IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 28, 2018

**STATE OF TENNNESSEE v. STEPHEN RICHARD MAYES**

**Appeal from the Criminal Court for Knox County**
**No. 102696       Scott Green, Judge**

_____

**No. E2018-00612-CCA-R3-CD**

_____

The Defendant, Stephen Richard Mayes, pleaded guilty to aggravated kidnapping, and the trial court entered the agreed out-of-range sentence of fifteen years of incarceration, to be served as a Range II offender. The Defendant filed a motion to correct an illegal sentence pursuant to Rule 36.1 of the Tennessee Rules of Criminal Procedure, alleging that he was mentally incompetent at the time of sentencing, that he negotiated to be sentenced as a Range I offender and not a Range II offender, and that his sentence was illegal as it was out-of-range. The trial court summarily dismissed the motion, finding that he had not presented a colorable claim for relief because he had negotiated and agreed to an out-of-range sentence, which had not yet expired. On appeal, the Defendant maintains that his sentence is illegal. After review, we affirm the criminal court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Steven Richard Mayes, Clifton, Tennessee, *Pro Se*.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; and Charme Prater Allen, District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

On May 21, 2014, the Defendant pleaded guilty to aggravated kidnapping, one of five counts for which he had been indicted. The record indicates that the State dismissed four other counts as part of the plea agreement, Counts: one, especially aggravated

kidnapping; three, aggravated robbery; four, aggravated assault; and five, aggravated assault. Handwritten on the waiver of jury trial and acceptance of guilty plea form signed by the Defendant in the recommended sentence section is: "15 years to serve sentence being outside of Range I 100% with possible 15% off for Good Behavior And sentencing credits costs. All other counts dismissed."

A transcript of the guilty plea hearing is contained in the record. During the hearing, the State informed the trial court that the Defendant was pleading to aggravated kidnapping, that the recommended sentence was fifteen years, and that the Defendant, a Range II offender, was "obviously, pleading out of range" and that as the crime was a violent offense, service of the sentence was going to be at one hundred percent. The parties agreed that the Defendant could potentially be entitled to fifteen percent credit for good behavior. The trial court ensured that the Defendant understood the rights that he was waiving by pleading guilty to the charged offense. The trial court informed the Defendant that he was entering his guilty plea as a Range II offender, which had a sentencing range of twelve to twenty years. He informed the Defendant that the service of the sentence would be 100% less any time for good behavior.

The Defendant informed the trial court that he had not taken any medication in the last 24 hours and that he was "technically" married. The Defendant said that he was homeless and that he was the father of six minor children. The Defendant said that he understood his rights and that he wanted to plead guilty.

The State then informed the trial court that, had the case gone to trial:

> [T]he State . . . would call the witnesses listed on the indictment and Michelle Mayes would testify that she had been married to the [D]efendant for some time. That as of August the 5th, 2013 she had been trying to get away from him because of a history of abusive and harassing behavior on the part of the [D]efendant.
>
> She would testify that she had kind of lost contact with him because of some problems that he had had in another county with her. But that on August the 5th, 2013 she was getting ready to go to work at a Subway Station at 10224 Kingston Pike in Knox County. She was sitting in her car about 4:50 a.m. She was waiting until her boss got there to open up the store. And she heard footsteps, saw a man running toward her with a gun.
>
> At first she didn't recognize the [D]efendant because his head was shaved and he had a different kind of facial hair. She thought she was

getting ready to be robbed. When he came to the door she realized that it was the [D]efendant.

She would testify that he covered her mouth, pointed a gun at her, told her to scoot over so he could drive. He told her, "You're not going to work today." He tried to make her get on the floorboard in the back of the car, but the car was full of materials so he wasn't able -- she wasn't able to do that.

He was badgering her with questions about her roommate Chris. He made verbal threats. He took her to a different location. Your Honor, please, he – while they were driving he demanded her debit card. He pulled her into the parking lot of the Campbell Station Liquor Store and she tried to get out. He pulled her back to the ground. He placed his hands on the side of her head, told her it would be easy to break her neck. He forced her back into the car, threatened to duct tape her and put her in the trunk.

He was trying to get gas in the vehicle, and she was able to tear off the duct tape and was able to flee into the Pilot Station where she called for the police. At this time there was an Order of Protection against the [D]efendant. All of these events occurred in Knox County.

Ms. Mayes was present and informed the trial court that she had suffered panic attacks and been diagnosed with PTSD. She said that she had lost over 100 pounds and was suffering from "the stress." She expressed her desire that the Defendant serve his entire sentence. The trial court accepted the Defendant's guilty plea and sentenced the Defendant "to 15 years in the state penitentiary as, in effect, a range two offender at one hundred percent."

On March 12, 2018, the Defendant filed a motion to correct an illegal sentence, contending that his sentence was illegal pursuant to Tennessee Rule of Criminal Procedure 36.1. He asserted that his sentence directly contravenes the applicable statute and that defense counsel, the State, and the trial judge all committed fraud upon him. In support of his assertion, he stated that he was pleading guilty as a Range I offender but sentenced outside the applicable range at fifteen years. He further contends that he was suffering "serious mental illness" that rendered him incompetent at the time of his guilty plea.

On March 20, 2018, the trial court summarily dismissed the Defendant's motion. It found:

[The Defendant] pled guilty and was sentenced to an agreed upon term of fifteen (15) years within the Tennessee Department of Correction. The gravamen of the pro-se pleading centers upon the proposition that this court was without jurisdiction to sentence [the Defendant] in excess of the range one maximum twelve years. The pro-se pleading ignores, however, the fact that [the Defendant] agreed to the fifteen year term that he now attacks. It is well settled law that a defendant and the State may negotiate an agreement which entails a defendant accepting a sentence outside of his/her range of punishment. Moreover, T.R.Cr.P. Rule 36.1 provides relief which is limited in scope to an "illegal sentence". The term "illegal sentence" has consistently been interpreted as being coextensive with, and not broader than, the definition of this same term in the habe[a]s corpus contenxt. *See e.g., State v. Wooden*, 478 S.W.3d 585 (Tenn. 2015). In that [the Defendnat] was sentenced to a fifteen year term in May of 2014, the sentence has not expired. Likewise, the fifteen year term is within the statutory range of punishment for a Class B felony sentence and is therefore not facially illegal. Accordingly, the instant pro-se motion is, and shall be, **DENIED.**

On April 4, 2018, the Defendant filed a motion to amend his motion to correct his illegal sentence, contending that there were "fatal clerical errors." The allegations contained there were identical to the previous allegations made by the Defendant. By order entered April 13, 2018, the trial court denied the Defendant's motion finding that the allegations set forth were "substantially identical" to the ones the Defendant presented in his previous motion.

It is from that judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that his sentence is illegal because he was sentenced to a term outside his applicable range. The State counters that a defendant may agree to a hybrid sentence that mixes the range assignment, term of years, and release eligibility without regard to what our sentencing scheme might call for absent a plea agreement. We agree with the State.

Rule 36.1 permits a defendant to seek correction of an unexpired illegal sentence at any time. *See State v. Brown*, 479 S.W.3d 200, 211 (Tenn. 2015). "[A]n illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1(a). Our supreme court has interpreted the meaning of "illegal sentence" as defined in Rule 36.1 and concluded that

the definition "is coextensive, and not broader than, the definition of the term in the habeas corpus context." *State v. Wooden*, 478 S.W.3d 585, 594-95 (Tenn. 2015). The court then reviewed the three categories of sentencing errors: clerical errors (those arising from a clerical mistake in the judgment sheet), appealable errors (those for which the Sentencing Act specifically provides a right of direct appeal) and fatal errors (those so profound as to render a sentence illegal and void). *Id*. Commenting on appealable errors, the court stated that those "generally involve attacks on the correctness of the methodology by which a trial court imposed sentence." *Id*. In contrast, fatal errors include "sentences imposed pursuant to an inapplicable statutory scheme, sentences designating release eligibility dates where early release is statutorily prohibited, sentences that are ordered to be served concurrently where statutorily required to be served consecutively, and sentences not authorized by any statute for the offenses." *Id*. The court held that only fatal errors render sentences illegal. *Id*. A trial court may summarily dismiss a Rule 36.1 motion if it does not state a colorable claim for relief. Tenn. R. Crim. P. 36.1(b)(2).

Generally, a trial court's error "in offender classification" will not "render the sentence illegal so long as the classification falls with the purview of the Sentencing Act." *Cantrell v. Easterling*, 346 S.W.3d 445, 458 (Tenn. 2011). The only time an error in the classification of an offender would ever rise to the level of an illegal sentence would be if a trial court, somehow, classified a defendant in a category not available under the Sentencing Act. *Id*. at 458-59. Put another way, an offender classification would create an illegal sentence only if the trial court classified the defendant in a category for which it did "not have the authority or the jurisdiction to classify a defendant." *Id*. at 458. Otherwise, "[c]orrection of an alleged error in offender classification must be sought on direct appeal." *Id*.

Furthermore, our courts have long recognized "the ability of the State and defendants to use offender classification and release eligibility as subjects of plea bargain negotiations" which "are properly characterized as non-jurisdictional." M*cConnell v. State*, 12 S.W.3d 795, 798 (Tenn. 2000). That appears to be just what occurred here. The Defendant pleaded guilty to one count of a five-count indictment. In exchange, the State agreed to a fifteen-year sentence, which was within the range for a Class B felony but above the range for a Range I offender. The Defendant acknowledged at the guilty plea hearing that he understood his sentence, the classification, and the applicable range. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE